IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN H. MARTIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-697-N (BF) |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U. S. C. § 636(b), the District Court referred this case to the United States Magistrate Judge for findings, conclusions, and recommendation. This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Stephen H. Martin ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The Court has considered Plaintiff's Brief, filed August 7, 2009, and Defendant's Brief, filed September 4, 2009. The Court has reviewed the parties' evidence in connection with the pleadings and hereby recommends that the District Court AFFIRM the Commissioner's decision

### I. BACKGROUND[1]

*A. Procedural History*

Plaintiff filed an application for SSI on June 30, 2005,[2] claiming a disability onset date of

---

[1]The following history comes from the transcript of the administrative proceedings, which is designated as "Tr."

[2] The Court notes that the ALJ's decision states that Plaintiff's application for SSI is dated September 1, 2006. (Tr. 16.) Therefore, the ALJ's decision finds Plaintiff has not been disabled since September 1, 2006. (Tr. 22.) However, because the ALJ considered Plaintiff's complete medical history, the Court finds that the error is harmless

January 1, 2003. (Tr. 90.) Plaintiff's application was denied both initially and upon reconsideration. (Tr. 41; 45.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 39.) The ALJ conducted the *de novo* administrative hearing in Dallas, Texas on January 16, 2008. (Tr. 16.) Plaintiff appeared at the hearing with a representative and testified. (Tr. 16.) A vocational expert ("VE") and a medical expert ("ME") also testified. (Tr. 16.)

On March 12, 2008, the ALJ issued his Notice of Decision finding Plaintiff "not disabled" as defined by the Act. (Tr. 13.) Plaintiff requested and was denied review of the ALJ's decision by the Appeals Council. (Tr. 5; 11.) Plaintiff filed this case on April 16, 2009, seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). (Doc. 1.) This matter is ripe for consideration on the merits.

### *B. Factual History*

#### 1. Plaintiff's Age, Education, and Work Experience

Plaintiff's date of birth is March 5, 1961. (Tr. 90.) Plaintiff did not complete high school and did not obtain a GED. (Tr. 21; 720.) He has no other specialized training or education. (Tr. 21.) Plaintiff has past relevant work as a dockworker and clothes presser. (Tr. 21.)

#### 2. Plaintiff's Medical Evidence

Plaintiff suffered a back injury at work in June 1999. (Tr. 188.) X-rays taken at that time were normal. (Tr. 217.) His diagnosis was a lumbar sprain. (Tr. 217.) On July 15, 1999, Plaintiff saw a neurologist for pain in his low back and legs. (Tr. 211; 219.) The electromyographic examination ("EMG") and nerve conduction tests were normal. (Tr. 220.) The primary diagnosis was low back pain with some intermittent radiation to the lower extremities. (Tr. 222.) On July 21, 1999, Plaintff

---

and has not substantially prejudiced the rights of Plaintiff.

had a lumbar spine computed tomography ("CT") evaluation, which suggested a mild central posterior protrusion of the nucleus pulposus at the L4-5 level. (Tr. 212.) A magnetic resonance imaging ("MRI") was performed on July 30, 1999, which revealed L4-5 disc degeneration and posterior disc herniation slightly to the right of the midline causing no stenosis or nerve impingement. (Tr. 212.) A functional capacities evaluation for worker's compensation was performed August 9, 1999. (Tr. 173.) At that time, Plaintiff could lift twenty pounds floor to waist and had a maximum push/pull of fifty pounds. (Tr. 174.) It was recommended that Plaintiff complete a work hardening program. (Tr. 174.) After the work hardening program, Plaintiff underwent another functional capacities evaluation. (Tr. 165.) It was recommended that he return to work with restrictions. (Tr. 166.)

Plaintiff saw John C. Milani, M.D. on October 8, 1999. (Tr. 290.) The lumbar x-rays and CT scan were normal. (Tr. 293.) An MRI scan showed minimal L4-5 desiccation with a small degenerative type protrusion but no large herniation or neurologic encroachment. (Tr. 293.) His assessment was discogenic pain at L4-5. (Tr. 293.) Dr. Milani felt he had reached maximum medical improvement and gave him a 0 impairment. (Tr. 294; 296.) Plaintiff saw Vannoy S. Cole, M.D. on November 8, 1999, who disagreed with the 0 impairment given by Dr. Milani. (Tr. 212.) Dr. Cole referred Plaintiff to an anesthesiologist and pain specialist, who diagnosed Plaintiff with chronic low back pain and lumbar facet syndrome and recommended a lumbar facet injection. (Tr. 212.) Plaintiff received another lumbar facet injection on August 23, 2000. (Tr. 212.)

An MRI on October 14, 2004, showed L2 left pedicle hemangioma and L4-5 desiccation with posterior disc bulging without compromise of the spinal canal or neural formina. (Tr. 215.) Dr. Milani reviewed the medical record on May 27, 2005. (Tr. 324.) He noted that EMG and nerve

conduction studies on July 15, 1999 showed no specific abnormality. (Tr. 324.) X-rays performed that day were normal. (Tr. 325.) He concluded that "the main finding is desiccation at L4-5 with a small protrusion but without nerve compression." (Tr. 325.)

Plaintiff underwent a physical examination on June 2, 2005. (Tr. 322.) He had lumbar paraspinal muscle spasm most prominent in the quadratus lumborum bilaterally. (Tr. 323.) The assessment was bilateral L4 radiculopathy. (Tr. 323.) A lumbar discogram on June 15, 2005 indicated discordant pain at L4-5 and L5-S1. (Tr. 321.) A CT scan showed annular disc bulge at L4-5 with mild central stenosis. (Tr. 319.) The doctor recommended that Plaintiff consider surgery. (Tr. 317.) However, Plaintiff decided to proceed with pain management. (Tr. 561.)

Plaintiff saw Miles R. Day, M.D. on December 29, 2005. (Tr. 628.) After reviewing Plaintiff's symptoms, Dr. Day recommended trigger point injections. (Tr. 630.) Plaintiff received a trigger point injection on February 22, 2006. (Tr. 617.) He received another injection on September 20, 2006. (Tr. 586.)

Tom G. Mayer examined Plaintiff on February 15, 2007. (Tr. 665.) Plaintiff had chronic posterior ramus right lumbar radicular pain with muscle guarding and mobility deficits but no radiculopathy. (Tr. 667.) Dr. Mayer also diagnosed Plaintiff with deconditioning syndrome and chronic pain syndrome with medical and psychological features. (Tr. 667.) An August 22, 2007 lumbar spine MRI showed degenerative disc disease at L4-5 producing no stenosis. (Tr. 663.)

### 3. Plaintiff's Hearing

Plaintiff was represented by counsel at the January 16, 2008 hearing. (Tr. 694.) After the ALJ admitted the exhibits into the record, the ALJ examined the ME. (Tr. 695.) The ME's testified that his specialty is neurology. (Tr. 695.) He testified that after reviewing the medical records, he

4

could find no evidence of a severe physical impairment. (Tr. 695.) He gave Plaintiff a diagnosis of chronic pain but noted that there was no objective medical evidence to support Plaintiff's level of pain. (Tr. 696-98.) He stated that chronic pain does not meet the listing requirements. (Tr. 695-96.)

Plaintiff's attorney then examined the ME. (Tr. 698.) The ME testified that he did not agree with Plaintiff's treating doctors' assessment that Plaintiff needs surgery. (Tr. 699.) He said he would not recommend surgery for "chronic pain without instability, without a fracture, [or] without a major radiculopathy." (Tr. 699.) He then testified that "diskograms are poorly correlated with the pathology." (Tr. 700.) He further testified that Dr. Mayer had no objective evidence to base his diagnosis of possible radiculopathy on. (Tr. 702.) He also disagreed with Plaintiff's treating doctor's assessment of Plaintiff's abilities because it was based on Plaintiff's subjective complaints and not objective medical tests. (Tr. 706.)

Plaintiff then testified. (Tr. 708.) He testified that standing hurts, pain shoots through his legs, his right leg gets weak, and its hard for him to stand, bend and squat. (Tr. 708-09.) He can only sit for ten to thirty minutes and stand for twenty to thirty minutes at one time. (Tr. 709.) He has used a cane for two years. (Tr. 709.) He spends his days sitting and lying down in bed. (Tr. 710.) He spends maybe six to eight hours a day lying down, depending on the pain. (Tr. 710.) He is unable to sleep through the night due to the pain. (Tr. 711.)

Plaintiff then testified that, since his injury in 1999, he has tried to work through a temporary service. (Tr. 711.) Because his pain was too high to do manual labor, he tried light duty work on an assembly line. (Tr. 711.) However, he was unable to keep the job because the pain caused him to miss work on a regular basis. (Tr. 712.)

He testified that he takes medication for the pain but that it does not help at all. (Tr. 712-13.)

5

He takes Ambien to help him sleep. (Tr. 713.) He wears a TENS unit, which relieves the pain sometimes but other times not. (Tr. 713.) He is always in pain. (Tr. 713.) He is unable to get out of the house much besides going to the doctor. (Tr. 713.) He has a three year old daughter that he is unable to pick up or play with. (Tr. 714.) He sometimes is able to take short walks outside, but walking causes him more pain. (Tr. 714.)

He testified that he is still seeing Dr. Mayer for pain management. (Tr. 714.) Dr. Mayer is suggesting the fusion surgery. (Tr. 714.) He is going to receive shots to try to stop the pain in his leg. (Tr. 714.) He has received injections in the past that did not work. (Tr. 715.) He is planning on making an appointment with a psychiatrist. (Tr. 715.)

The ALJ then examined Plaintiff. (Tr. 715.) He testified that he receives food stamps and TANF. (Tr. 715.) He lives with his fiance, who is unemployed. (Tr. 716.) He has two children. (Tr. 719.) His son is in school during the days. (Tr. 719.) When his fiance was employed, he cared for his three year old daughter at home. (Tr. 719.) Besides a little walking, he does some stretches. (Tr. 720.)

The ALJ then examined the VE. (Tr. 722.) The VE testified that Plaintiff's past relevant work included loading dockworker (medium, semiskilled, SVP of 3), clothes presser (light, unskilled, SVP of 2), and assembler (light, unskilled). (Tr. 722.) He then testified that a person with the residual functional capacity ("RFC") to lift or carry twenty pounds occasionally and ten pounds frequently, sit six hours per day, stand or walk two hours per day, never climb ladders or ropes, occasionally use ramps and stairs, and occasionally balance, stoop, kneel, crouch or crawl would not be able to perform Plaintiff's past relevant work. (Tr. 722-23.) However, a person with the same RFC and Plaintiff's same education and work background could perform 200 occupations,

represented by about 120,000 jobs in Texas and 1.2 million jobs nationwide. (Tr. 723.) Examples of these jobs include semi-conduction loader, eyeglass frame packager, film inspector, or order clerk. (Tr. 723.) The VE then testified that a person with the previous RFC and the inability to sustain an eight-hour day on a consistent basis would not be able to perform any competitive work. (Tr. 723-24.)

Plaintiff's attorney then examined the VE. (Tr. 724-25.) The VE testified that a person with the previous RFC that had the additional limitation of needing to lie down every two hours would not be able to perform unskilled, sedentary work. (Tr. 725.)

### *C. ALJ's Findings*

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his application date of September 1, 2006. (Tr. 18.) Second, the ALJ found that Plaintiff's degenerative disc disease is a severe impairment. (Tr. 18.) Third, he found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the regulations. (Tr. 18.) Fourth, the ALJ found that Plaintiff has the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, sit six of eight hours, stand or walk two of eight hours, never climb ladders or ropes, and occasionally use ramps, stairs, balance, stoop, kneel, crouch and crawl. (Tr. 19.) In making his RFC determination, the ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible because he gave conflicting testimony. (Tr. 20.) Fifth, the ALJ found that Plaintiff can not return to his past relevant work as a dockworker and clothes presser, both of which involve light exertion. (Tr. 21.) Sixth, the ALJ found that Plaintiff was a

7

younger individual on the date the application was filed and has a limited education. (Tr. 21.) Seventh, he found that transferability of job skills is not an issue. (Tr. 21.) Eighth, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 21.) Finally, the ALJ found that Plaintiff has not been under disability, as defined by the Act, since September 1, 2006. (Tr. 22.)

## II. ANALYSIS

### A. Standard of Review

A claimant must prove that he is disabled for purposes of the Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically- determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding

>             of "not disabled" must be made.
>
>         5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. §405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

Having reviewed the applicable legal standards, the Court now turns to the merits of the case.

***B. Issues for Review***

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Plaintiff contends that substantial evidence does not support the ALJ's finding as to the credibility of Plaintiff and that the evidence clearly shows that Plaintiff is unable to maintain substantial gainful activity.

For the following reasons, the Court recommends that the decision of the ALJ be AFFIRMED.

### *C. Substantial Evidence*

Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. In the instant case, the ALJ determined that Plaintiff has the RFC to perform less than the full range of sedentary activity. In so finding, the ALJ found Plaintiff's testimony to be not credible and his complaints of chronic pain to be unsupported by objective medical evidence. The Court finds that substantial evidence supports the ALJ's determination.

The diagnostic tests run over many years have been inconclusive. A June 1999 lumbar spine x-ray was normal. (Tr. 217.) Both a lumber spine CT study and lumbar spine MRI, performed in July 1999, revealed minimal findings. (Tr. 212.) Plaintiff's EMG and nerve conduction study in July 1999 were both normal. (Tr. 220.) The October 1999 x-rays and CT scan were normal. (Tr. 293.) A lumbar spine MRI in October 2004 revealed minimal findings. (Tr. 215.) A June 2005 CT of the lumbar spine after diskographic injection and a lumbar diskogram both revealed only a small protrusion without nerve compression. (Tr. 325.) A lumber spine MRI in August 2007 revealed some degenerative disc disease but no stenosis. (Tr. 663.) The ME testified that although Plaintiff

has a chronic pain disorder, there was no evidence that he had a nerve disorder causing the pain. (Tr. 696.) He further testified that the results of Plaintiff's many examinations, myelograms, MRIs, and EMGs were all "pretty normal." (Tr. 696.) Although the ME testified that people with chronic pain have a very low yield for returning to work, he also testified that there was no objective evidence to support the severity of Plaintiff's subjective complaints. Based on the above evidence, the ALJ's determination that of Plaintiff's RFC is supported by substantial evidence.

Despite the existence of substantial evidence to support the ALJ's RFC determination, Plaintiff complains of severe, disabling pain that forces him to spend most of the day in bed. Although the ALJ found that Plaintiff's degenerative disc disease could reasonably be expected to produce the alleged symptoms, he found that Plaintiff's testimony regarding the intensity, persistence and limiting effects of those symptoms to be not credible. Plaintiff asserts that substantial evidence does not support this finding and that the evidence shows Plaintiff is unable to maintain substantial gainful activity.

The ALJ found the Plaintiff not credible due to inconsistencies in his testimony at the hearing and the medical records. Of particular importance to the ALJ in making this credibility determination was Plaintiff's admitted ability to take care of his three year old child while his wife worked during the day. Furthermore, the ALJ noted that this testimony was inconsistent with his testimony that he has to lie in bed most of the day. "The ALJ's findings regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference." *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). Therefore, the ALJ's decision to exclude any additional limitations in assessing Plaintiff's RFC based on his determination that Plaintiff's statement regarding the severity of his symptoms "are not credible" in light of the record evidence is supported

by substantial evidence.

Accordingly, substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity.

### III. CONCLUSION

For the foregoing reasons, the Court recommends that the decision of the ALJ be AFFIRMED.

SO RECOMMENDED, November 22, 2010.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).